HORNBECK, J.,
dissenting:
I am in agreement that theBackenstoe divorce decree may not be successfully attacked in this proceeding and that the property known as Graceland was owned by Grace at the time of her death.
The burden of proof would not-affect my conclusion of the matter wherever it is placed. I appreciate, however, that it may become of prime importance upon a review of our judgment. It may be, that upon the whole case, the burden is upon the plaintiffs, but it is difficult to support any theory which will enable the defendants, as representatives of Grace, to take a share of the estate here involved unless and until they have established that she, at the time. *153 of Pat Murnaifis death, was his wife.
Judge Barnes in the majority opinion has set forth the most effective facts and inferences in support of a ceremonial marriage of which the reeord is susceptible.
Upon the controlling question, the reeord presents two distinct and different periods affecting the lives and the status of the parties involved and, in my judgment, two .insurmountable obstacles to the maintenance of the claim that Pat and Grace were married.
The first period dates from on or about 1915 and ends in 1919. The second period begins in 1919 and ends with the taking of the deposition of Grace.
From June, 1915, the date of the alleged ceremonial marriage, until 1919, there is not one word of documentary proof tending to establish the marital relation between Pat and Grace. All of it is to the contrary. In the ordinary case this class of evidence would not be available to any considerable degree. Here we have it in abundance and it is compelling in probative effect because of the conflict and uncertainty in the word of mouth evidence. Some of the testimony of the holding out of these parties as husband and wife and especially of their living together as such, is of •doubtful value. That relating to the vital question of the existence of a marriage certificate is, to say .the least, not convincing. The ■marriage records in the Court House at Flagstaff, Arizona, are of major importance, and afford no support whatever for the claim of a ceremonial marriage. The absence of such evidence may be explained only by imputing misconduct, or gross carelessness, to officials who were charged with the duty of making and keeping these public records. Nothing in the evidence affords sufficient support for such a conclusion.
The records at Flagstaff present the first insurmountable obstacle1 and preclude, without respect to the burden of proof, a finding that the parties were ceremonially married. Other difficulties of less consequence appear. For • instance, during this first period, every instrument, and there are many of them (12 deeds) signed by the respective parties, wherein their marital status is set out, refutes the claim of any marriage up to 1919.
The second period begins in 1919 when Pat acquired the farm in Worthington. From this time and until the taking of the deposition of Grace, every fact appearing in the evidence, written and oral, with one exception, affecting the status of these parties is to the effect that they sustained the relationship of husband and wife. Upon the acquisition of the farm, Pat deeded it to Grace, as his wife, and named it Graceland. They lived in the home at Graceland, as husband and wife, and openly and continuously so held themselves out to the public. Every deed executed by them, or either of them, recited that they were husband and wife. Pat made formal accounting to the Federal Government for income tax purposes and. claimed exemptions as a married man. Their business and banking transactions were conducted as husband and wife.
It is inconsistent to say that there was a new and separate contract in praesenti to marry on or about 1919, if the parties then knew that they were ceremonially married. Even this handicap could be overcome by the force of the testimony and a contract implied in fact if it were not for a statement of Grace in her deposition.
*154 Notwithstanding the trend of later decision wherein there has been stressed the necessity of an agreement in praesenti to constitute a common law marriage, this essential may be established by implication. If this were not so, no common' law marriage could be proven unless some witness was available to state the terms of the agreement to marry.
The principle is well stated in the opinion in Bruner v Briggs, 39 Oh St 480:
“It is now too well settled to admit of dispute, that in all civil actions, when the rights to succession of an estate depends on the existence of a marriage, it may be proved by reputation, declarations and conduct of the parties.”
The following authorities recognize this to be the law: 18 R. C. L. 426, 429, 433; Stewart v Welsh, 41 Oh St 483; Duncan v Duncan, 10 Oh St 181; Wolverton v State, 16 Ohio 176; Howard v Central National Bank, 21 Oh Ap 74; Jenkins v Jenkins, 30 Oh Ap 336; Schwartz v Schwartz, 13 O. C. C. 62; §11989 G. C.
But all the cases recognize that the contract to marry must appear and the effect of living together as husband and wife, and the holding out of this relationship to the public raises but a presumption of common law marriage which may or may not, under all the facts appearing, be sufficient to establish the marriage.
In most of the Ohio cases one of the parties to the marriage testify to the terms of the contract which it was claimed constituted an agreement in praesenti to marry. In no case has any court found a common law marriage to be proven wherein one of the parties expressly stated that no such contract of marriage existed. This brings us to the second insurmountable obstacle in this case, namely, the statement of Grace in her deposition that there was but one marriage which was the ceremony performed in Flagstaff.
If we hold that a common law agreement to, marry is established by the cohabitation and the holding out of these parties, we not only must disregard the testimony tending to establish ceremonial marriage, the most potent of which is the statement of Grace, but also find either, that she was mistaken, or misstating the truth, when she said that there was but one marriage. This can not be reconciled with the probabilities. ■ Such an event as an agreement to marry would make such an indelible impression upon the minds of the contracting parties, especially the woman, that they would never forget it. The situation developed by the testimony of Grace gives application to the law as announced in Dirion v Brewer, Admr., et al., 20 Oh Ap 298; Holmes v Pere Marquette Rd. Co., 28 Oh Ap 297; Lumas v Lumas, 26 Oh Ap 502; the leading case of Umbenhower v Latous, 85 Oh St, 238, and In re Estate of Redman, 135 Oh St 558, in all of which cases the Court emphasized the necessity that, to constitute a common law marriage not only must there be cohabitation as husband and wife, a holding out to the public of that relationship, but these acts must follow the agreement to marry. Re Estate of Redman, supra, has special application. The Court found that there had been cohabitation between the parties, a holding out as husband and wife, but that the parties agreed that marrigae was not for them and that they did not desire the status. This latter *155 fact does not appear in the instant ease, but here, as in the eited case, the statement of one of the parties to the claimed common law marriage completely refutes the existence of one of the essential elements to its establishment.
This case is unusual in its complexities and conflicts. No determination which may be made under the facts will completely satisfy the intellect. The record may not be read without the impression that Pat and Grace were married, but an analysis of the essentials of proof will not, in my judgment, permit of the determination that they were married in any form recognized in the law.